## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DR. NORMAN HECHING**;
**JOSEPH WERFEL**;
**AVRAHAM NEFOUSSI**;
**DAVID SAMUEL SALIS**, individually and as parent
and natural guardian of minor E.Y.S.;
**DANA-LEE SALIS**, individually and as parent and
natural guardian of minor E.Y.S.;
**E.Y.S.**, minor, by his parents and natural guardians
David Samuel Salis and Dana-Lee Salis;
**RABBI SAUL GOLDSTEIN**, individually and as
parent and natural guardian of minors S.R.G., M.G.,
B.Y.G., E.G., A.D.G., N.G. and B.G.;
**MIRIAM GOLDSTEIN**, individually and as parent and
natural guardian of minors S.R.G., M.G., B.Y.G., E.G.,
A.D.G., N.G. and B.G.;
**S.R.G.**, minor, by her parents and natural guardians
Rabbi Saul Goldstein and Miriam Goldstein;
**M.G.** minor, by his parents and natural guardians Rabbi
Saul Goldstein and Miriam Goldstein;
**B.Y.G.**, minor, by her parents and natural guardians
Rabbi Saul Goldstein and Miriam Goldstein;
**E.G.** minor, by his parents and natural guardians Rabbi
Saul Goldstein and Miriam Goldstein;
**A.D.G.**, minor, by his parents and natural guardians
Rabbi Saul Goldstein and Miriam Goldstein;
**N.G.**, minor, by her parents and natural guardians Rabbi
Saul Goldstein and Miriam Goldstein;
**B.G.**, minor, by her parents and natural guardians Rabbi
Saul Goldstein and Miriam Goldstein;
**MALKA GOLDSTEIN**;
**MOSHE GEDALIAH GOLDSTEIN**;
**HAYA LEVINE**, individually, as parent and natural
guardian of minors A.L., C.L., and Y.Y.L., and as
personal representative of the Estate of Rabbi Kalman
(Cary) Levine;
**ESTATE OF RABBI KALMAN (CARY) LEVINE**;
**A.L.**, minor, by his parent and natural guardian Haya
Levine;
**C.L.**, minor, by her parent and natural guardian Haya
Levine;
**Y.Y.L.**, minor, by his parent and natural guardian Haya
Levine;

Civil Action No. _____

**MICHAL LEVINE**, individually and as parent and natural guardian of minor H.Y.A.

**H.Y.A.**, minor, by her parent and natural guardian Michal Levine;

**BASSHEVA MIRIAM PELCOVICS**, individually and as parent and natural guardian of minors L.Y.P., Y.M.P., N.B.P., and Y.C.P.;

**L.Y.P.**, minor, by her parent and natural guardian Bassheva Miriam Pelcovics;

**Y.M.P.**, minor, by his parent and natural guardian Bassheva Miriam Pelcovics;

**N.B.P.**, minor, by his parent and natural guardian Bassheva Miriam Pelcovics;

**Y.C.P.**, minor, by his parent and natural guardian Bassheva Miriam Pelcovics;

**YITZCHOK MEIR LEVINE;**

**YERACHMIEL LEVINE;**

**MOSHE LEVINE;**

**AVRAHAM LEVINE;**

**YAKOVA KUPINSKY**, individually, as parent and natural guardian of minors Y.K.(1), D.K., M.K., and Y.K.(2), and as personal representative of the estate of Rabbi Aryeh Kupinsky;

**ESTATE OF RABBI ARYEH KUPINSKY**, by its personal representative Yakova Kupinsky;

**Y.K.(1)**, minor, by his parent and natural guardian Yakova Kupinsky;

**D.K.**, minor, by her parent and natural guardian Yakova Kupinsky;

**M.K.**, minor, by her parent and natural guardian Yakova Kupinsky;

**Y.K.(2)**, minor, by his parent and natural guardian Yakova Kupinsky;

**ELIYAHU KUPINSKY**;

**BASHY MIRIAM TWERSKY**, individually and as personal representative of the Estate of Rabbi Moshe Twersky;

**MESHULEM TWERSKY**, individually, as parent and natural guardian of minors R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), and S.T., and as personal representative of the Estate of Rabbi Moshe Twersky;

**R.T.(1)**, minor, by her parent and natural guardian Meshulem Twersky;

**C.T.**, minor, by her parent and natural guardian Meshulem Twersky;

**E.T.(1)**, minor, by her parent and natural guardian

Meshulem Twersky;
**Y.T.**, minor, by his parent and natural guardian
Meshulem Twersky;
**M.T.**, minor, by his parent and natural guardian
Meshulem Twersky;
**E.T.(2)**, minor, by her parent and natural guardian
Meshulem Twersky;
**S.T.**, minor, by her parent and natural guardian
Meshulem Twersky;
**ESTATE OF RABBI MOSHE TWERSKY**, by its
personal representatives Bashy Miriam Twersky and
Meshulem Twersky;
**REFAEL TWERSKY**, individually and as parent and
natural guardian of minors A.T., I.T., and R.T.(2);
**A.T.**, minor, by his parent and natural guardian Refael
Twersky;
**I.T.**, minor, by her parent and natural guardian Refael
Twersky;
**R.T.(2)**, minor, by her parent and natural guardian Refael
Twersky;
**RIVKA WALDER**, individually and as parent
and natural guardian of minors Y.A.W., I.W.
and Y.W.;
**Y.A.W.**, minor, by his parent and natural guardian Rivka
Walder;
**I.W.**, minor, by her parent and natural guardian Rivka
Walder;
**Y.W.**, minor, by his parent and natural guardian Rivka
Walder;
**NECHAMA CHARLAP**, individually and as parent and
natural guardian of minors I.C. and E.C.;
**I.C.**, minor, by her parent and natural guardian Nechama
Charlap;
**E.C.**, minor, by his parent and natural guardian Nechama
Charlap; and
**AVRAHAM TWERSKY**,

                              Plaintiffs,

    vs.

**SYRIAN ARAB REPUBLIC**,
c/o Foreign Minister Walid al-Mualem
Ministry of Foreign Affairs
Kafr Sousah, 17th April, Damascus, Syria

Defendant.

_____/

## COMPLAINT

Plaintiffs, by counsel, bring this action for damages against Defendant, the Syrian Arab

Republic, and allege as follows:

## INTRODUCTION

1.      This is a civil action brought pursuant to the Foreign Sovereign Immunities Act,

28 U.S.C. §§ 1602, *et. seq.* (the "FSIA") seeking damages for wrongful death, personal injury

and related torts, that resulted from a terrorist shooting and stabbing attack carried out by the

Popular Front for the Liberation of Palestine ("PFLP") terrorist organization on November 18,

2014, in Jerusalem, Israel (the "Terrorist Attack").

2.      Defendant, the Syrian Arab Republic ("Syria"), provided the PFLP with material

support and resources, authorized and ratified the actions of its officers, employees and agents

described herein, and took other actions that facilitated, enabled, and caused the Terrorist Attack.

3.      This action is brought by the estates of U.S. citizens Rabbi Kalman (Cary) Levine,

Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky, who were murdered in the Terrorist Attack;

by U.S. citizens Dr. Norman Heching, Joseph Werfel, Avraham Nefoussi, David Samuel Salis,

Rabbi Saul Goldstein, and M.G. minor, all of whom were present at the scene of the Terrorist

Attack and suffered serious physical, emotional, and/or other injuries therein or as a result

thereof; and by the family members of the aforementioned decedents and plaintiffs.

4

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this matter and over the defendant pursuant to 28 U.S.C. §§ 1330, 1331, and 1605A. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f).

**THE PARTIES**

5.      Plaintiff Dr. Norman Heching was stabbed during the Terrorist Attack, and is and at all times was an American citizen.

6.      Plaintiff Joseph Werfel was present at the scene of the Terrorist Attack, and is and at all times was an American citizen.

7.      Plaintiff Avraham Nefoussi was present at the scene of the Terrorist Attack is and at all times was an American citizen.

8.      Plaintiff David Samuel Salis was present at the scene of the Terrorist Attack and is and at all times was an American citizen. David Samuel Salis brings this action individually and as parent and natural guardian of his son, minor plaintiff E.Y.S.

9.      Plaintiff Dana-Lee Salis is and at all relevant times was the spouse of plaintiff David Samuel Salis. Dana-Lee Salis brings this action individually and as parent and natural guardian of her son, minor plaintiff E.Y.S.

10.      Plaintiff E.Y.S., minor, is and at all times was an American citizen, and the son of plaintiffs David Samuel Salis and Dana-Lee Salis.

11.      Plaintiff Rabbi Saul Goldstein was stabbed during the Terrorist Attack, and is and at all times was an American citizen. Rabbi Saul Goldstein brings this action individually and as parent and natural guardian of his minor children, plaintiffs S.R.G., M.G., B.Y.G., E.G., A.D.G., N.G., and B.G.

12.     Plaintiff Miriam Goldstein is and at all relevant times was an American citizen, and the spouse of plaintiff Rabbi Saul Goldstein. Miriam Goldstein brings this action individually and as parent and natural guardian of her minor children, plaintiffs S.R.G., M.G., B.Y.G., E.G., A.D.G., N.G., and B.G.

13.     Plaintiff S.R.G., minor, is and at all times was an American citizen, and the daughter of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

14.     Plaintiff M.G., minor, is and at all times was an American citizen, and the son of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein. Plaintiff M.G. was also present at the scene of the Terrorist Attack.

15.     Plaintiff B.Y.G., minor, is and at all times was an American citizen, and the daughter of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

16.     Plaintiff E.G., minor, is and at all times was an American citizen, and the son of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

17.     Plaintiff A.D.G., minor, is and at all times was an American citizen, and the son of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

18.     Plaintiff N.G., minor, is and at all times was an American citizen, and the daughter of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

19.     Plaintiff B.G., minor, is and at all times was an American citizen, and the daughter of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

20.     Plaintiff Malka Goldstein is and at all times was an American citizen, and the daughter of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

21.     Plaintiff Moshe Gedaliah Goldstein is and at all times was an American citizen, and the son of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

22.     Plaintiff Haya Levine is and at all relevant times was an American citizen. She is the widow and personal representative of the estate of American citizen, Rabbi Kalman (Cary) Levine, who was murdered in the Terrorist Attack. Haya Levine is also the mother of minor plaintiffs A.L., C.L., and Y.Y.L. Haya Levine brings this action individually, on behalf of the Estate of Rabbi Kalman (Cary) Levine, and as parent and natural guardian of her minor children, A.L., C.L., and Y.Y.L.

23.     Plaintiff the Estate of Rabbi Kalman (Cary) Levine brings this action through its personal representative, plaintiff Haya Levine.

24.     Plaintiff A.L., minor, is and at all times was an American citizen and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

25.     Plaintiff C.L., minor, is and at all times was an American citizen and the daughter of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

26.     Plaintiff Y.Y.L., minor, is and at all times was an American citizen and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

27.     Plaintiff Michal Levine is and at all times was an American citizen, and the daughter of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine. Michal Levine brings this action individually and as parent and natural guardian of her minor daughter plaintiff H.Y.A.

28.     Plaintiff H.Y.A., minor, is and at all times was an American citizen, and the granddaughter of Rabbi Kalman (Cary) Levine.

29.     Plaintiff Bassheva Miriam Pelcovics is and at all times was an American citizen, and the daughter of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine. Bassheva Miriam Pelcovics brings this action individually and as parent and natural guardian of her minor children plaintiffs L.Y.P., Y.M.P., N.B.P., and Y.C.P.

30.     Plaintiffs L.Y.P., Y.M.P., N.B.P., and Y.C.P. are and at all times were American citizens, and the grandchildren of Rabbi Kalman (Cary) Levine.

31.     Plaintiff Yitzchok Meir Levine is and at all times was an American citizen, and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

32.     Plaintiff Yerachmiel Levine is and at all times was an American citizen, and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

33.     Plaintiff Moshe Levine is and at all times was an American citizen, and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

34.     Plaintiff Avraham Levine is and at all times was an American citizen, and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

35.      Plaintiff Yakova Kupinsky is and at all relevant times was an American citizen. She is the widow and personal representative of the estate of American citizen, Rabbi Aryeh Kupinsky, who was murdered in the Terrorist Attack, and the mother of minor plaintiffs Y.K.(1), D.K., M.K., and Y.K.(2). Yakova Kupinsky brings this action individually, on behalf of the Estate of Rabbi Aryeh Kupinsky, and as parent and natural guardian of her minor children, Y.K.(1), D.K., M.K., and Y.K.(2).

36.     Plaintiff the Estate of Rabbi Aryeh Kupinsky brings this action through its personal representative, plaintiff Yakova Kupinsky.

37.     Plaintiff Y.K.(1), minor, is and at all times was an American citizen and the son of Rabbi Aryeh Kupinsky and plaintiff Yakova Kupinsky.

38.     Plaintiff D.K., minor, is and at all times was an American citizen and the daughter of Rabbi Aryeh Kupinsky and plaintiff Yakova Kupinsky.

39.     Plaintiff M.K., minor, is and at all times was an American citizen and the daughter of Rabbi Aryeh Kupinsky and plaintiff Yakova Kupinsky.

40.     Plaintiff Y.K.(2), minor, is and at all times was an American citizen and the son of Rabbi Aryeh Kupinsky and plaintiff Yakova Kupinsky.

41.     Plaintiff Eliyahu Kupinsky, is and at all times was an American citizen and the son of Rabbi Aryeh Kupinsky and plaintiff Yakova Kupinsky.

42.     Plaintiff Bashy Miriam Twersky is and at all relevant times was an American citizen. She is the widow and personal representative of the estate of American citizen, Rabbi Moshe Twersky, who was murdered in the Terrorist Attack. Bashy Miriam Twersky brings this action individually and on behalf of the Estate of Rabbi Moshe Twersky.

43.     Plaintiff Meshulem Twersky is and at all relevant times was an American citizen, and the son of Rabbi Moshe Twersky and plaintiff Bashy Miriam Twersky. Together with his mother, plaintiff Bashy Miriam Twersky, he is personal representative of the Estate of Rabbi Moshe Twersky. Meshulem Twersky brings this action individually, on behalf of the Estate of Rabbi Moshe Twersky, and as parent and natural guardian of his minor children plaintiffs R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), and S.T.

44.     Plaintiffs R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), and S.T., minors, are and at all times were American citizens, and the grandchildren of Rabbi Moshe Twersky.

45.     Plaintiff the Estate of Rabbi Moshe Twersky brings this action through its personal representatives, plaintiffs Bashy Miriam Twersky and Meshulem Twersky.

46.     Plaintiff Refael Twersky is and at all times was an American citizen, and the son of Rabbi Moshe Twersky and plaintiff Bashy Miriam Twersky. Rafael Twersky brings this

action individually and as parent and natural guardian of his minor children plaintiffs A.T., I.T., and R.T.(2).

47.     Plaintiffs A.T., I.T., and R.T.(2), minors, are and at all times were American citizens, and the grandchildren of Rabbi Moshe Twersky.

48.      Plaintiff Rivka Walder is and at all times was an American citizen, and the daughter of Rabbi Moshe Twersky and plaintiff Bashy Miriam Twersky. Rivka Walder brings this action individually and as parent and natural guardian of her minor children plaintiffs Y.A.W., I.W., and Y.W.

49.     Plaintiffs Y.A.W., I.W., and Y.W., minors, are and at all times were American citizens, and the grandchildren of Rabbi Moshe Twersky.

50.     Plaintiff Nechama Charlap is and at all times was an American citizen, and the daughter of Rabbi Moshe Twersky and plaintiff Bashy Miriam Twersky. Nechama Charlap brings this action individually and as parent and natural guardian of her minor children plaintiffs I.C. and E.C.

51.     Plaintiffs I.C. and E.C., minors, are and at all times were American citizens, and the grandchildren of Rabbi Moshe Twersky.

52.     Plaintiff Avraham Twersky is and at all times was an American citizen, and the son of Rabbi Moshe Twersky and plaintiff Bashy Miriam Twersky

53.     Defendant the Syrian Arab Republic is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Syria provided material support and resources for the commission of acts of extrajudicial killing, within the meaning of 28 U.S.C. § 1605A, including the Terrorist Attack, authorized and ratified

the actions of its officers, employees and agents described herein, and performed other actions

that facilitated, enabled, and caused the Terrorist Attack and the harm to the plaintiffs herein.

## STATEMENT OF FACTS

### The Popular Front for the Liberation of Palestine

54.     The Popular Front for the Liberation of Palestine ("PFLP") was formed in 1967.

It is a radical Marxist-Leninist terrorist organization. The PFLP's openly-declared goal is the

destruction of the State of Israel and the murder or expulsion of its Jewish residents. The PFLP

seeks to achieve this goal by carrying out terrorist attacks against Jewish civilians in Israel and

elsewhere. The PFLP proudly and openly acknowledges that it uses terrorism to achieve its

political goals.

55.     The PFLP is also extremely hostile to the United States, which it considers to be

predatory, imperialistic, capitalistic, and an ally of Israel. The PFLP's hostility to the U.S. has

become even greater since the outbreak of the civil war in Syria in 2011. During the years

immediately preceding the Terrorist Attack the PFLP repeatedly threatened the U.S. with

violence, and pledged to help Syria fight "the U.S. aggression" against it.

56.     Between the time of its founding and November 18, 2014 (and through the

present day), PFLP has carried out hundreds of terrorist attacks in which scores of Israeli and

U.S. citizens were murdered and hundreds more wounded.

57.     The PFLP has been continuously designated by the United States Government as

a Specially Designated Terrorist ("SDT") since 1995, as a Foreign Terrorist Organization

("FTO") since 1997, and as a Specially Designated Global Terrorist ("SDGT") since 2001.

58.     Since 1982 and until the present day, the PFLP's headquarters have been

continuously located in Damascus, Syria.

### Syria Shares the PFLP's Ideology and Goals and Supports its Terrorist Activities

59.     Syria has been ruled by the secular Arab Socialist Ba'ath Party since a 1963 coup d'état.

60.     Through two subsequent rebellions within the Ba'ath Party, Hafez al-Assad seized the Syrian presidency in 1970 and established an authoritarian government closely allied with the Soviet Union. Hafez al Assad shared with his Soviet patrons socialist and anti-American beliefs as well as common military interests.

61.     Hafez al-Assad ruled Syria for 30 years, and, upon his death, was succeeded by his son, Bashar al-Assad, the current president of Syria and leader of the Arab Socialist Ba'ath Party – Syria Region.

62.     Both Hafez and Bashar al-Assad implemented militantly anti-American and anti-Israel policies and have used their support of terrorist organizations, including the PFLP, to advance these policies.

63.     Throughout the Ba'ath Party rule, and during all periods relevant to this suit, it has been the continuous and official policy of Syria, under both Hafez and Bashar al-Assad to use terrorism to advance its interests both domestically and abroad. Syria exploits its support of terrorist organizations to obtain leverage with Western countries, either "punishing" them or obtaining concessions from them. By providing safe haven and resources to terrorist organizations, Syria is also able to enlist these proxies to carry out attacks against Israel and advance Syrian interests in the Arab-Israeli conflict.

64.     Additionally, Syria utilizes its support of international terrorism to attempt to (a) intimidate and influence the United States government and public and thereby to weaken, harm and undermine the United States militarily, economically and politically and (b) intimidate and

influence the Israeli government and public and thereby bring about the eventual eradication of the State of Israel, its replacement with an Arab state, and the murder and/or expulsion of the Jewish residents of the State of Israel.

65.     Towards these ends, Syria has provided massive material support and resources to numerous anti-Israel, anti-American terrorist organizations, including the PFLP, which shares Syria's violently anti-American and anti-Israel ideology.

66.     Since 1979 until the present time, Syria has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

### Syria's Provision of Material Support and Resources to the PFLP

67.     During the period relevant hereto, Syria provided the PFLP with material support and resources within the meaning of 28 U.S.C. § 1605A(a)(1), described in detail below, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing, including the Terrorist Attack. Such support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Syria, in order to assist the PFLP achieve goals shared by Syria. These goals included terrorizing the Jewish civilian population in Israel, weakening Israel's economy, social fabric, and military strength and preparedness, and harming Israel's allies and supporters, especially the United States.

68.     Syria provided the material support and resources detailed below pursuant to an agreement reached between Syria and the PFLP in the late 1960s, which remains in force until today. Under that agreement, the PFLP undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel and elsewhere, and in return Syria undertook to provide the PFLP

with material support and resources to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement between Syria and the PFLP was to achieve the goals detailed in the preceding paragraph.

69.     Syria provided the material support and resources detailed below through its security and intelligence agencies. These security and intelligence agencies included, without limitation: the Syrian Ministry of Defense ("SMD"); Syrian Military Intelligence (a/k/a/ *Shu'bat al-Mukhabarat al-Askariyya*) ("SMI"); the Syrian Air Force Intelligence Directorate (a/k/a/ *Idarat al-Mukhabarat al-Jawiyya*) ("SAFID"); Syria's General Intelligence Directorate (a/k/a *Idarat al-Mukhabarat al-Amma*) ("GID"); and Syria's Political Security Directorate (a/k/a *Idarat al-Amn al-Siyasi*) ("PSD").

70.     Syria provided the material support and resources detailed below through officers, employees, and agents of Syria who worked in or with the SMD, SMI, SAFID, GID and PSD. These Syrian officers, employees, and agents included without limitation: Mustafa Tlass, Hassan Ali Turkmani, Fahd Jassem al-Freij, Daoud Abdallah Rajiha, Ali Habib Mahmud, Abdel-Fatah Qudsiyeh, Rafiq Shahadah, Hassan Khalil, Assef Shawkat, Ali Douba, Ibrahim Hueiji, Mohammed Dib Zaitoun, Ali Mamlouk, Zouheir Hamad, Hisham Ikhtiyar, Ghazi Kanaan, Muhammad Mansoura, Rustum Ghazali, and others (collectively below: "Syrian Officials").

71.     The material support and resources that were provided to the PFLP by Syria and the Syrian Officials in the years immediately prior to the Terrorist Attack for the purpose of facilitating acts of extrajudicial killing and terrorism included inter alia: provision of financial support to the PFLP; provision of military-grade explosives, military firearms and other weapons and matériel to the PFLP; provision of specialized and professional military training for the planning and execution of terrorist attacks (hereinafter: "terrorist training") to the PFLP;

providing use of Syria-owned and operated training bases and military facilities in which

terrorist training was provided to the PFLP and its operatives; providing the PFLP and its leaders

and operatives safe haven and refuge from capture in Syria and in areas of Lebanon controlled by

Syria; providing the PFLP means of electronic communication and electronic communications

equipment; financial services, including banking and wire transfer services, provided to the

PFLP by financial institutions owned and controlled by Syria, at Syria's direction, which

services were intended to and did enable the PFLP to surreptitiously transfer funds; and means of

transportation, including allowing leaders and operatives of the PFLP passage and transportation

on Syrian-owned aircraft to allow them to avoid detection and carry out further terrorist attacks.

72.     At all times relevant hereto, Syria and the Syrian Officials provided the PFLP and

its operatives with terrorist training at military training bases, camps and facilities operated

and/or funded and/or controlled by Syria and located in Syria and in areas of Lebanon controlled

by Syria, with the specific intention of causing and facilitating the commission of acts of

extrajudicial killing and international terrorism including the Terrorist Attack. This terrorist

training, which was professional and extensive and included the use of explosives, firearms and

other weapons, was provided by and through Syrian military and intelligence officials, and other

agents, employees and officers of Syria acting within the scope of their agency, employment and

office, and under the express command and authorization of Syria and the Syrian Officials.

73.     In addition, at all times relevant hereto, Syria and the Syrian Officials provided

terrorist training, weapons, and funds to be used to carry out terrorist attacks to the PFLP and its

leaders and operatives, by and through the agency of other terrorist organizations which received

material support and resources from Syria and the Syrian Officials, and which acted as

instrumentalities, agents and proxies of Syria and the Syrian Officials for the purpose of providing terrorist training and other material support and resources to the PFLP .

74.     At all times relevant hereto, Syria and the Syrian Officials provided the PFLP and its leaders and operatives with lodging, safe haven, and shelter in Syria and in areas of Lebanon controlled by Syria, with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing freely and unhindered. This lodging, safe haven, and shelter was provided on military bases and facilities, and land, and in buildings and residences, owned and/or controlled by Syria.

75.     Additionally, since 1982 and until the present day, Syria and the Syrian Officials have continuously permitted and enabled the PFLP to maintain its headquarters in Damascus, Syria. Since 1982 and until the present day, Syria and the Syrian Officials have continuously provided the PFLP with material support and resources necessary for the maintenance and operation of the PFLP's headquarters in Damascus, including without limitation land, physical facilities and buildings, and vital utilities such as electricity, water, postal services, and electronic communications services (including telephone, facsimile, internet access, and electronic mail).

76.     The material support and resources described in the previous paragraph have enabled the PFLP, since 1982 and until the present day, to use the PFLP headquarters in Damascus: to organize, build and expand the PFLP's material and human infrastructure in Israel, the West Bank, the Gaza Strip, and elsewhere; to plan, coordinate and direct the activities of the PFLP's operatives in Israel, the West Bank, the Gaza Strip, and elsewhere; and to plan and direct the execution of acts of terrorism in Israel and elsewhere, including the Terrorist Attack.

77.     Syria and the Syrian Officials gave substantial aid and assistance to the PFLP, and provided the massive material support and resources described above to the PFLP, and thereby

aided and abetted the PFLP, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing, including the Terrorist Attack. Syria and the Syrian Officials did so with actual knowledge that the PFLP had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting, and provision of material support and resources to the PFLP.

78.     Syria and the Syrian Officials knowingly and willingly conspired, agreed and acted in concert with the PFLP, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing, including the Terrorist Attack. Syria and the Syrian Officials did so with actual knowledge that the PFLP had killed and injured numerous U.S. citizens and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with the PFLP.

79.     At all times relevant hereto, SMD, SMI, SAFID, GID and PSD were agencies, instrumentalities and/or offices of Syria, and performed actions on behalf of Syria, in furtherance of the interests and policy of Syria and within the scope of their agency and office, within the meaning of 28 U.S.C. §1605A(a)(1) and 28 U.S.C. §1605A(c), which caused the Terrorist Attack and harm to the plaintiffs herein, in that SMD, SMI, SAFID, GID and PSD implemented and acted as conduits and instrumentalities for Syria's provision of funds, terrorist training, and other material support and resources to the PFLP for the commission of acts of extrajudicial killing including the Terrorist Attack.

80.     Syria authorized, ratified and approved the actions of SMD, SMI, SAFID, GID and PSD described herein, and is therefore vicariously liable for those actions.

81.     At all relevant times, the Syrian Officials were officers, employees, and agents of Syria, and performed actions on behalf of Syria, in furtherance of the interests and policy of Syria, and within the scope of their office, employment and agency, within the meaning of 28 U.S.C. §§ 1605A(a)(1) and 1605A(c), which caused the Terrorist Attack and harm to the plaintiffs herein, in that the Syrian Officials authorized, planned and caused the provision of funds, terrorist training and other material support and resources by Syria to the PFLP for the commission of acts of extrajudicial killing including the Terrorist Attack.

82.     Syria authorized, ratified and approved the actions described herein of the Syrian Officials, and is therefore vicariously liable for those actions.

## The Terrorist Attack

83.     The Jerusalem neighborhood of Har Nof is located on the southwestern edge of the city in an area that has been part of the modern State of Israel since Israel's independence in 1948.

84.     Har Nof's population of about 20,000 mostly Orthodox Jews, is unique in that an unusually large percentage of the residents are American citizens.

85.     Har Nof is home to dozens of synagogues. The Congregation Bnei Torah synagogue (the "Synagogue") is one of the largest in the neighborhood.

86.     At an unknown time prior to November 18, 2014, the PFLP planned, conspired and made preparations to carry out a terrorist attack at the Synagogue.

87.     Pursuant to the aforementioned plan, on November 18, 2014, at approximately 6:55 am, two terrorist agents and operatives of the PFLP, Uday Abu Jamal and Ghassan Abu Jamal, burst into the Synagogue wielding firearms, meat cleavers, and an axe, and began

shooting and slashing their way through the sanctuary, which was packed with worshipers in the midst of their morning prayers.

88.     Rabbi Kalman (Cary) Levine had attended an earlier prayer service. He came to the Synagogue to discuss a point of Jewish law with the congregation's rabbi. While standing in the hall outside of the prayer sanctuary, Rabbi Levine was brutally murdered by the PFLP terrorists as they entered the Synagogue.

89.     Rabbi Aryeh Kupinsky and Rabbi Moshe Twersky were among those praying in the Synagogue that morning, and were brutally murdered by the PFLP terrorists in the prayer sanctuary.

90.     Plaintiffs Dr. Norman Heching and Rabbi Saul Goldstein, who were also praying in the Synagogue that morning, were stabbed and seriously injured by the PFLP terrorists. Rabbi Goldstein's young son, plaintiffs M.G., was at morning prayers alongside his father, and witnessed the attack on his father and the other victims.

91.     Plaintiffs Joseph Werfel and David Samuel Salis were present in the Synagogue during the attack, and plaintiff Avraham Nefoussi, a volunteer emergency medical responder, arrived at and entered the Synagogue to treat the victims, while the attack was still in progress.

92.     Syria and the Syrian Officials conspired, and acted through and/or in concert, with the PFLP, in pursuit of their common goals, design and agreements, detailed above, to carry out extrajudicial killings and acts of international terrorism, including the November 18, 2014 Terrorist Attack.

93.     The Terrorist Attack was carried out by the PFLP further to and as implementation of its aforementioned agreement and conspiracy with Syria and the Syrian Officials.

94.     The PFLP planned, made the preparations necessary for, and carried out the Terrorist Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by Syria and the Syrian Officials, for the specific purpose of carrying out the Terrorist Attack and other such acts of extrajudicial killing and international terrorism.

### FIRST COUNT
### ACTION FOR DAMAGES UNDER 28 U.S.C. § 1605A(c)

95.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

96.     Syria is a foreign state that since 1979 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

97.     Syria provided to the PFLP material support and resources, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the Terrorist Attack.

98.     Syria conspired with the PFLP to carry out the Terrorist Attack.

99.     SMD, SMI, SAFID, GID and PSD are agencies, instrumentalities and/or offices of Syria, and they provided the material support and resources which caused and facilitated the Terrorist Attack, and conspired with the PFLP to carry out the Terrorist Attack, all within the scope of their agency and office.

100.    The Syrian Officials are officers, employees, and agents of Syria, and they provided the material support and resources which caused and facilitated the Terrorist Attack, and conspired with the PFLP to carry out the Terrorist Attack, all while acting within the scope of their office, employment, and agency.

101.    The PFLP is an agent of Syria, and it carried out the Terrorist Attack while acting within the scope of its agency.

102.     The Terrorist Attack was an extrajudicial killing within the meaning of 28 U.S.C. § 1605A.

103.     Decedent Rabbi Kalman (Cary) Levine was murdered in the Terrorist Attack. The murder of Rabbi Kalman (Cary) Levine caused decedent, his estate, and plaintiffs Haya Levine, A.L., C.L., and Y.Y.L., Michal Levine, H.Y. A., Bassheva Miriam Pelcovics, L.Y.P., Y.M.P., N.B.P., Y.C.P., Yitzchok Meir Levine, Yerachmiel Levine, Moshe Levine, and Avraham Levine, severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

104.     Decedent Rabbi Aryeh Kupinsky was murdered in the Terrorist Attack. The murder of Rabbi Aryeh Kupinsky caused decedent, his estate, and plaintiffs Yakova Kupinsky, Y.K.(1), D.K., M.K.,Y.K.(2), and Eliyahu Kupinsky, severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

105.     Decedent Rabbi Moshe Twersky was murdered in the Terrorist Attack. The murder of Rabbi Moshe Twersky caused decedent, his estate, and plaintiffs Bashy Miriam Twersky, Meshulem Twersky, R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), S.T., Refael Twersky, A.T., I.T., R.T.(2), Rivka Walder, Y.A.W., I.W., Y.W., Nechama Charlap, I.C., E.C., and Avraham Twersky, severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

106.     Plaintiff Rabbi Saul Goldstein was present in the synagogue and was stabbed repeatedly during the Terrorist Attack, was placed in extreme fear of immediate death or serious

physical injury (for both himself and his son, plaintiff M.G., who was also present), witnessed the terrorists murder and maim the other victims, among many other horrifying sights, and suffered severe physical and other injuries as a result, including: stab wounds, disfigurement, loss of physical and mental functions, and multiple surgeries; extreme pain and suffering; severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

107.    Plaintiff M.G. was present in the synagogue during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury (for both himself and his father), and witnessed a terrorist repeatedly stab his father, plaintiff Rabbi Saul Goldstein, and murder and maim the other victims, among many other horrifying sights. Plaintiff M.G. suffered severe harm as a result of the Terrorist Attack, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; and loss of solatium.

108.    The injuries suffered by plaintiffs Rabbi Saul Goldstein and M.G. in the Terrorist Attack caused plaintiffs Miriam Goldstein, S.R.G., B.Y.G., E.G., A.D.G., N.G., B.G., Malka Goldstein, and Moshe Gedaliah Goldstein, severe harm, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

109.    Plaintiff Dr. Norman Heching was present in the synagogue and was stabbed during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury, witnessed the terrorists murder and maim the other victims, among many other horrifying sights, and suffered severe physical and other injuries as a result, including: stab wounds, disfigurement, sutures, and loss of physical functions; extreme pain and suffering; severe

emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

110.    Plaintiff Joseph Werfel was present in the synagogue during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury, witnessed the terrorists murder and maim the other victims, among many other horrifying sights, and suffered severe harm as a result, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

111.    Plaintiff Avraham Nefoussi was present in front of and in the synagogue during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury, witnessed the terrorists murder and maim the other victims, among many other horrifying sights, and suffered severe harm as a result, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

112.    Plaintiff David Samuel Salis was present in the synagogue during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury, witnessed many horrifying sights, and suffered severe harm as a result, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

113.    Plaintiff David Samuel Salis' presence in the synagogue during the Terrorist Attack, and the harm suffered by him as a result thereof, caused plaintiff E.Y.S. severe harm, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; and loss of solatium. Plaintiff, E.Y.S.'s emotional injuries were

23

severely compounded by his own close proximity to the Terrorist Attack, hearing the shooting and police and ambulance sirens, and witnessing the police, military, and emergency medical response in the immediate aftermath of the Terrorist Attack, all while knowing that his father was in the Synagogue.

114.     The murder of the decedents and the harm and injuries suffered by the plaintiffs due to the Terrorist Attack were the direct and proximate result of Syria's conduct described herein.

115.     Syria is therefore liable for the full amount of plaintiffs' damages under 28 U.S.C. § 1605A(c), in such sums as may hereinafter be determined.

116.     Syria's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

<strong>SECOND COUNT</strong><br><strong><u>WRONGFUL DEATH</u></strong><br><strong>(Under the Law of the District of Columbia and Other Applicable Law)</strong>

117.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

118.     Syria, itself and/or through its officers, agents, employees and/or co-conspirators, willfully and deliberately caused, authorized, organized, planned, aided, abetted, induced, conspired to commit, provided material support for and executed the Terrorist Attack.

119.     Syria's behavior constituted a breach of legal duties to desist from causing, committing, aiding, abetting, authorizing, inducing, or conspiring to commit, acts of extrajudicial killing, and to refrain from intentionally, recklessly or negligently causing the infliction of death, physical injuries or harm to persons such as the plaintiffs herein and their decedents.

120. Syria's actions were willful, malicious, intentional, wrongful, unlawful, negligent and/or reckless and were the proximate cause of the Terrorist Attack and the deaths of decedents Rabbi Kalman (Cary) Levine, Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky.

121. At the time of his death, decedent Rabbi Kalman (Cary) Levine was 55 years of age, enjoying good health, was industrious and in possession of all his faculties.

122. The murder of Rabbi Kalman (Cary) Levine caused decedent, his estate and plaintiffs Haya Levine, A.L., C.L., Y.Y.L., Michal Levine, H.Y.A., Bassheva Miriam Pelcovics, L.Y.P., Y.M.P., N.B.P., Y.C.P., Yitzchok Meir Levine, Yerachmiel Levine, Moshe Levine, and Avraham Levine, severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

123. At the time of his death, decedent Rabbi Aryeh Kupinsky was 43 years of age, enjoying good health, was industrious and in possession of all his faculties.

124. The murder of Rabbi Aryeh Kupinsky caused decedent, his estate and plaintiffs Yakova Kupinsky, Y.K.(1), D.K., M.K.,Y.K.(2), and Eliyahu Kupinsky, severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

125. At the time of his death, decedent Rabbi Moshe Twersky was 59 years of age, enjoying good health, was industrious and in possession of all his faculties.

126. The murder of Rabbi Moshe Twersky caused decedent, his estate and plaintiffs Bashy Miriam Twersky, Meshulem Twersky, R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), S.T., Refael Twersky, A.T., I.T., R.T.(2), Rivka Walder, Y.A.W., I.W., Y.W., Nechama Charlap, I.C., E.C., and Avraham Twersky, severe injury, including: pain and suffering; pecuniary loss and loss

of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

127.    Syria is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

128.    Syria's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

## THIRD COUNT
## <u>SURVIVAL DAMAGES</u>
### (Under the Law of the District of Columbia and Other Applicable Law)

129.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

130.    The murder of Rabbi Kalman (Cary) Levine caused him and his estate severe injury, including pain and suffering, pecuniary loss and loss of income. From the beginning of the Terrorist Attack until his death, decedent Rabbi Kalman (Cary) Levine suffered great conscious pain, shock and physical and mental anguish.

131.    The murder of Rabbi Aryeh Kupinsky caused him and his estate severe injury, including pain and suffering, pecuniary loss and loss of income. From the beginning of the Terrorist Attack until his death, decedent Rabbi Aryeh Kupinsky suffered great conscious pain, shock and physical and mental anguish.

132.    The murder of Rabbi Moshe Twersky caused him and his estate severe injury, including pain and suffering, pecuniary loss and loss of income. From the beginning of the Terrorist Attack until his death, decedent Rabbi Moshe Twersky suffered great conscious pain, shock and physical and mental anguish.

133.     Syria is therefore liable to the Estates of Rabbi Kalman (Cary) Levine, Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky, for the full amount of decedents' damages, in such sums as may hereinafter be determined.

134.     Syria's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

**FOURTH COUNT**
**<u>BATTERY</u>**
**(Under the Law of the District of Columbia and the Law of the State of Israel)**

135.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

136.     The Terrorist Attack was an intentional act that caused harmful bodily contact to plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching, and therefore constituted a battery on the persons of plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching under the law of the District of Columbia.

137.     The Terrorist Attack also constituted a battery on the persons of plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching under Israeli law.

138.     Causes of action in tort in Israeli law are codified in the *Civil Wrongs Ordinance (New Version) - 1968*, (hereinafter "CWO"). The CWO provides that any person injured or harmed by the torts enumerated in the CWO is entitled to relief from the person liable or responsible for the tort. CWO § 23 creates a tort of Assault and Battery defined as the intentional use of any kind of force, directly or indirectly, against a person's body, in any manner, without that person's consent; or an attempt or threat, by act or gesture, to use force against a person's body, when the person making the attempt or threat can be reasonably assumed to be have the intent and ability to carry out the attempt or threat.

27

139. The Terrorist Attack therefore constituted a battery on the persons of plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching under Israeli law.

140. As a result of the injuries inflicted on them by the Terrorist Attack, plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching required hospitalization and medical treatment, and continue to suffer from permanent injuries caused them by the Terrorist Attack.

141. Syria's actions were willful, malicious, intentional, reckless, unlawful and were the proximate cause of the Terrorist Attack and the battery on the persons of plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching and the injuries plaintiffs suffered thereby.

142. Syria is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

143. Syria's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

## FIFTH COUNT
## ASSAULT
### (Under the Law of the District of Columbia and the Law of the State of Israel)

144. The preceding paragraphs are incorporated by reference as though fully set forth herein.

145. The Terrorist Attack caused plaintiffs Rabbi Saul Goldstein, M.G., Dr. Norman Heching, Joseph Werfel, Avraham Nefoussi, and David Samuel Salis, imminent fear and apprehension of physical harm and death, and constituted an assault on their persons under the law of the District of Columbia and under § 23 of the Israeli CWO.

146. The Terrorist Attack and the assault on their persons, which were direct and proximate results of Syria's actions, caused plaintiffs Rabbi Saul Goldstein, M.G., Dr. Norman

Heching, Joseph Werfel, Avraham Nefoussi, and David Samuel Salis extreme fear, and profound mental anguish and trauma.

147.    Syria is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

148.    Syria's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

**SIXTH COUNT**
**<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**
**(Under the Law of the District of Columbia and Other Applicable Law)**

149.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

150.    Syria's conduct was intentional, outrageous and dangerous to human life, and violates applicable criminal law and all international standards of civilized human conduct and common decency.

151.    Syria intended to, and did in fact, terrorize the decedents and the plaintiffs, and cause them severe emotional distress.

152.    The Terrorist Attack and the murders of decedents Rabbi Kalman (Cary) Levine, Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky, caused the decedents severe emotional distress. From the beginning of the Terrorist Attack until their deaths, the decedents suffered extreme terror, mental anguish, and injury to their feelings.

153.    As a result of the Terrorist Attack and murder of Rabbi Kalman (Cary) Levine, plaintiffs Haya Levine, A.L., C.L. and Y.Y.L., Michal Levine, H.Y.A., Bassheva Miriam Pelcovics, L.Y.P., Y.M.P., N.B.P., Y.C.P., Yitzchok Meir Levine, Yerachmiel Levine, Moshe Levine, and Avraham Levine, have been deprived of the services, society, consortium and

solatium of their husband, father and grandfather, and have suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

154.   As a result of the Terrorist Attack and murder of Rabbi Aryeh Kupinsky, plaintiffs Yakova Kupinsky, Y.K.(1), D.K., M.K.,Y.K.(2), and Eliyahu Kupinsky, have been deprived of the services, society, consortium and solatium of their husband and father, and have suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

155.   As a result of the Terrorist Attack and murder of Rabbi Moshe Twersky, plaintiffs Bashy Miriam Twersky, Meshulem Twersky, R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), S.T., Refael Twersky, A.T., I.T., R.T.(2), Rivka Walder, Y.A.W., I.W., Y.W., Nechama Charlap, I.C., E.C., and Avraham Twersky, have been deprived of the services, society, consortium and solatium of their husband, father and grandfather, and have suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

156.   As a result of the Terrorist Attack and the ensuring carnage, which they personally witnessed in all its horror, plaintiffs Rabbi Saul Goldstein, M.G., Dr. Norman Heching, Joseph Werfel, Avraham Nefoussi, and David Samuel Salis have suffered and will continue to suffer extreme terror, severe mental anguish and injury to their feelings.

157.   As a result of Rabbi Saul Goldstein's presence at and injuries in the Terrorist Attack, plaintiffs Miriam Goldstein, S.R.G., M.G., B.Y.G., E.G., A.D.G., N.G., B.G., Malka Goldstein, and Moshe Gedaliah Goldstein have been deprived of the services, society, consortium and solatium of their husband and father, and have suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

158.     As a result of plaintiff M.G.'s presence at, and the injuries suffered by him as a result of, the Terrorist Attack, plaintiffs Rabbi Saul Goldstein, Miriam Goldstein, S.R.G., B.Y.G., E.G., A.D.G., N.G., B.G., Malka Goldstein, and Moshe Gedaliah Goldstein have been deprived of the services, society, consortium and solatium of their son and brother, and have suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

159.     As a result of plaintiff David Samuel Salis' presence at, and the injuries suffered by him as a result of, the Terrorist Attack, and as a result of their hearing the shooting and police and ambulance sirens, and witnessing the police, military, and emergency medical response in the immediate aftermath of the Terrorist Attack, while knowing that David was in the Synagogue, plaintiffs Dana-Lee Salis and E.Y.S. have been deprived of the services, society, consortium and solatium of their husband and father, and have suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

160.     Syria is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

161.     Syria's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

### SEVENTH COUNT
### <u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>
#### (Under the Law of the District of Columbia and Other Applicable Law)

162.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

163.    Syria's conduct was willful, outrageous and/or grossly negligent, was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

164.    Syria's conduct terrorized the decedents and the plaintiffs, and caused them severe emotional distress.

165.    Syria is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

166.    Syria's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

## EIGHTH COUNT
## NEGLIGENCE
### (Under the Law of the State of Israel)

167.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

168.    Section 35 of the Israeli CWO creates a tort of Negligence. CWO §35 provides that a person is liable for the tort of Negligence when he commits an act which a reasonable and prudent person would not have committed under the same circumstances; or refrains from committing an act which a reasonable and prudent person would have committed under the same circumstances; or, in the performance of his occupation, does not use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, and thereby causes damage to another person toward whom, under those circumstances he is obligated not to act as he did.

169.     CWO § 36 provides that the obligation stated in CWO § 35 is toward all persons, to the extent that a reasonable person would have under the same circumstances foreseen that, in the ordinary course of events, they were liable to be injured by the act or omission.

170.     Under binding precedent of the Israeli Supreme Court, the tort of Negligence also includes intentional and/or reckless conduct.

171.     Syria committed acts which a reasonable and prudent person would not have committed under the same circumstances, and refrained from committing acts which a reasonable and prudent person would have committed under the same circumstances, within the meaning of the CWO.

172.     Syria acted negligently in connection with the plaintiffs and their decedents, toward whom, in the circumstances described herein, Syria had an obligation not to act as it did. Syria was obligated not to act as it did because a reasonable person would, under the same circumstances, have foreseen that, in the ordinary course of events, the plaintiffs' and their decedents were likely to be injured by Syria's acts and omissions described herein.

173.     Syria's behavior therefore constitutes Negligence under the CWO, and as a result of Syria's negligent behavior the decedents were murdered and the decedents and the plaintiffs were severely injured, as set forth herein.

174.     Syria is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

175.     Syria's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

## NINTH COUNT
## CIVIL CONSPIRACY
**(Under the Law of the District of Columbia,
the Law of the State of Israel, and Other Applicable Law)**

176.    The preceding paragraphs are incorporated by reference as though fully set forth

herein.

177.    Syria knowingly and willingly conspired, agreed and acted in concert with the

PFLP in a common plan and design to facilitate and cause acts of international terrorism,

extrajudicial killing and personal injury including the Terrorist Attack.

178.    As a result of the Terrorist Attack caused, resulting from, and facilitated by

Syria's conspiracy with the PFLP, the decedents and the plaintiffs suffered the damages

enumerated herein.

179.    Civil conspiracy principles are recognized in Israeli law in § 12 of the CWO,

which provides that a person who participates in, assists, advises or solicits an act or omission,

committed or about to be committed by another person, or who orders, authorizes, or ratifies

such an act or omission, is liable for such act or omission.

180.    Syria is therefore liable for the full amount of plaintiffs' damages, in such sums as

may hereinafter be determined.

## TENTH COUNT
## AIDING AND ABETTING
**(Under the Law of the District of Columbia,
the Law of the State of Israel, and Other Applicable Law)**

181.    The preceding paragraphs are incorporated by reference as though fully set forth

herein.

182.    Syria provided the PFLP with material support and resources within the meaning

of 28 U.S.C. §1605A, and other substantial aid and assistance, in order to aid, abet, facilitate and

cause the commission of acts of international terrorism, extrajudicial killing and personal injury including the Terrorist Attack.

183.    As a result of the Terrorist Attack caused, resulting from and facilitated by Syria's provision of material support and resources to, and other acts of aiding and abetting, the PFLP, the decedents and the plaintiffs suffered the damages enumerated herein.

184.    Aiding and abetting principles are recognized in Israeli law in § 12 of the CWO, which provides that a person who participates in, assists, advises or solicits an act or omission, committed or about to be committed by another person, or who orders, authorizes, or ratifies such an act or omission, is liable for such act or omission.

185.    Syria is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

## ELEVENTH COUNT
## AGAINST ALL DEFENDANTS
## ON BEHALF OF ALL PLAINTIFFS
## VICARIOUS LIABILITY/RESPONDEAT SUPERIOR
### (Under the Law of the District of Columbia,
### the Law of the State of Israel, and Other Applicable Law)

186.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

187.    At all relevant times, the Syrian Officials were officers, employees and agents of Syria, acting within the scope of their office, employment, and agency. The Syrian Officials engaged in the actions described herein within the scope of their office, employment, and agency and in furtherance of the interests of defendant Syria.

188.    Syria authorized, ratified, and/or condoned the actions described herein of the Syrian Officials.

189.    Therefore, Syria is vicariously liable for the acts of the Syrian Officials.

190.     Respondeat superior and vicarious liability principles are recognized in Israeli law in CWO §§ 13 and 14, which provide that an employer is liable for an act or omission committed by his employee, if the employer authorized or ratified the act or omission, or if the employee committed the act or omission in the course of his employment, and that a person who employs an agent for the performance of an act or a category of acts is liable for everything the agent does in the performance of that act or category of acts, and for the manner in which the agent performs them.

191.     Syria is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

**WHEREFORE**, plaintiffs demand judgment as follows:

    a.  Judgment against defendant Syria for compensatory damages in an amount to be determined by the Court which is not less than $300,000,000 (three hundred million dollars);

    b.  Judgment against defendant Syria for punitive damages in an amount to be determined by the Court;

    c.  Plaintiffs' costs and expenses;

    d.  Plaintiffs' attorneys' fees;

    e.  Such further relief as the Court finds just and equitable.

June 18, 2017

                      Plaintiffs, by their attorneys,

                By:     /s/ Asher Perlin_____
                       Asher Perlin, Esq.
                       4600 Sheridan Street, Suite 303
                       Hollywood, Florida 33021
                       Tel. 954-284-0900 ext. 102
                       Fax. 954-284-0747