UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NORMAN HECHING**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **SYRIAN ARAB REPUBLIC**, <br><br> Defendant. | Civil Action No. 17-cv-1192 |
| **NORMAN HECHING**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **ISLAMIC REPUBLIC OF IRAN**, <br><br> Defendant. | Civil Action No. 17-cv-1659 |

**MEMORANDUM OPINION**

In November 2014, two terrorists attacked a synagogue in Jerusalem, killing six people and injuring many others. Plaintiffs—seven surviving victims, the estates of three deceased victims, and relatives of both—filed these lawsuits against Defendants Syria and Iran, alleging that Defendants provided material support to the terrorists who carried out the attack. In March 2023, this court entered default judgments on liability against Defendants and referred the matter to a Special Master to calculate compensatory damages. The Special Master submitted his Reports and Recommendations in May 2025, which the court adopted. This opinion provides the court's reasoning for its adoption of the Reports and Recommendations, and addresses Plaintiffs' outstanding request for punitive damages, which the court will GRANT in a separate order.

I.   BACKGROUND

On November 18, 2014, two terrorists, armed with a gun and a meat cleaver, attacked the Bnei Torah Synagogue in Jerusalem. *See Heching v. Syrian Arab Republic*, No. 17-cv-1192, 2023 WL 2384393, at *1 (D.D.C. Mar. 5, 2023); *see also* Norman Heching Decl. ¶¶ 5–8, ECF No. 47-4.[1] Three U.S. citizens—Rabbis Aryeh Kupinsky, Kalman Levine, and Mosheh Twersky—were killed. *See Heching*, 2023 WL 2384393, at *1. Numerous others were injured, including U.S. citizens Dr. Norman Heching, Joseph Werfel, David Salis, Avraham Nefoussi, Akiva Pollack, Rabbi Saul Goldstein, and Rabbi Goldstein's son Mordechai. *Id.* Dr. Heching's back was cut with a meat cleaver. Norman Heching Decl. ¶ 8. Rabbi Goldstein suffered an even deeper cut to his back, as well as severe head injuries. Saul Goldstein Decl. ¶ 14, ECF No. 47-1. Werfel, Salis, Nefoussi, Pollack, and Mordechai Goldstein were left deeply traumatized by the attack. *See* Chaya Werfel Decl. ¶¶ 20–23, ECF No. 47-4; David Salis Decl. ¶¶ 29–35, ECF No. 47-4; Avraham Nefoussi Decl. ¶¶ 20–35, ECF No. 47-4; Akiva Pollack ¶¶ 13–17, ECF No. 47-4; Mordechai Goldstein Decl. ¶¶ 30–35, ECF No. 47-1.

The estates of Rabbis Kupinsky, Levine, and Twersky; the seven aforenamed surviving victims; and relatives of both brought these actions against Syria and Iran under 28 U.S.C. § 1605A(c). That provision of the Foreign Sovereign Immunities Act ("FSIA") provides a private right of action for U.S. nationals injured by state-sponsored terrorism.

Plaintiffs properly served both Syria and Iran, but neither Defendant appeared before the court. *See Heching*, 2023 WL 2384393, at *1, 5. Plaintiffs thus moved for default judgment, which the court granted in March 2023 after finding that Defendants provided material support to

---

[1] This citation and all subsequent citations to the docket are to *Heching v. Islamic Republic of Iran*, No. 17-cv-1659.

the terrorists who carried out the November 18 attack. *Id.* at *2. The court then appointed Special Master Alan Balaran, pursuant to 28 U.S.C. § 1605A(e)(1), to evaluate Plaintiffs' claims for compensatory damages. *See* Order Appointing Alan Balaran, ECF No. 31.

Special Master Balaran submitted his Reports and Recommendations in May 2025, *see* Special Master Reports and Recommendations, ECF No. 46-1, and that same month, Plaintiffs filed Emergency Motions urging the court to quickly adopt the Special Master's recommendations so that Plaintiffs could meet a deadline to recover money from the U.S. Victims of State-Sponsored Terrorism Fund. *See, e.g.*, Emergency Mot. at 2, ECF No. 44. Plaintiffs waived any objection to the Special Master's recommendations. *See id.* at 4. Plaintiffs also requested punitive damages against Syria and Iran. *See id.* at 6.

After carefully reviewing the Special Master's recommendations, the court granted Plaintiffs' Emergency Motions in part, awarding Plaintiffs the compensatory damages recommended by the Special Master with an opinion to follow. *See, e.g.*, Order Adopting Special Master's Reports and Recommendations, ECF No. 48. The court then "defer[ed] judgment as to punitive damages." *Id.* at 3.

## II.   LEGAL STANDARD

Under the FSIA, a state sponsor of terrorism may be held liable for "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). To recover such damages, a default FSIA winner "must prove damages in the same manner and to the same extent as any other default winner." *Hill v. Republic of Iraq*, 328 F.3d 680, 683–84 (D.C. Cir. 2003) (cleaned up). Thus, for damages already suffered, the default winner must "reasonably prove[]" both that they suffered damages and the amount of those damages. *Id.* at 684 (quoting DOBBS LAW OF REMEDIES § 8.1(2), at 361–62, § 8.1(7) at 407 (2d ed. 1993)). For projected future

damages, the default winner must prove that those damages "are reasonably certain . . . to occur," and must establish "the amount of damages by a reasonable estimate." *Id.* (cleaned up); *see also Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1235 (D.C. Cir. 1997).

### III. COMPENSATORY DAMAGES

The court has received and reviewed the Reports and Recommendations of Special Master Alan Balaran as to compensatory damages. The Special Master carefully examined Plaintiffs' claims, and the court thanks him for his diligent work. For the reasons set forth below, the court adopted the Special Master's Reports and accepted his Recommendations.

#### A. Pain and Suffering

##### 1. Surviving Victims

"Each victim's suffering is unique," and thus it is difficult to compare one person's anguish to that of another. *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43, 57 (D.D.C. 2009). Nevertheless, because like cases should be treated alike, courts "must take pains to ensure that individuals with similar injuries receive similar awards." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 84 (D.D.C. 2010) (citation modified). To that end, courts in this district have "developed a general framework for assessing pain and suffering awards for victims" who survive a terrorist attack. *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 23 (D.D.C. 2016) (citing *Owens v. Republic of Sudan*, 71 F. Supp. 3d 252, 259 (D.D.C. 2014)). Under this framework, victims "who suffer serious physical injuries tend to receive a $5 million award," victims with "more serious or numerous injuries may receive $7 million (or more)," and victims with minor physical injuries or purely emotional harms tend to "receive something closer to $1.5 million." *Owens*, 71 F. Supp. 3d at 259. The Special Master properly followed this framework with respect to victims who survived the attack and correctly evaluated whether variances from the baseline

sums were warranted based on each victim's particular circumstances. *See, e.g.*, Goldstein R. & R. at 25, ECF No. 46-1 (noting that it was appropriate to adhere to the general framework while also maintaining "sight of the individual circumstances of each victim" (citation modified)).

First, the Special Master correctly found that five victims who survived the attack—Mordechai Goldstein, Avraham Nefoussi, Akiva Pollack, David Salis, and Joseph Werfel—suffered purely emotional injuries and that there were no circumstances warranting variances. He therefore recommended that each victim receive $1.5 million for pain and suffering. *See* Goldstein R. & R. at 30–31; Nefoussi R. & R. at 9–11, ECF No. 46-1; Pollack R. & R. at 7–9, ECF No. 46-1; Salis R. & R. at 12–15, ECF No. 46-1; Werfel R. & R. at 8–9, ECF No. 46-1. The court agrees with these recommendations. *See Estate of Doe v. Islamic Republic of Iran*, 943 F. Supp. 2d 180, 188 (D.D.C. 2013) (absent circumstances warranting a variance, "lasting and severe psychological pain" for a surviving victim generally warrants a $1.5 million award).

Second, the Special Master correctly found that Dr. Heching suffered both psychological pain and a minor physical injury—specifically, a cut to the back which required sutures. Heching R. & R. at 10, ECF No. 46-1. The Special Master therefore correctly determined that Dr. Heching should "receive something closer to," but greater than "$1.5 million." *Owens*, 71 F. Supp. 3d at 259. The court agrees with the Special Master's recommendation of a $2 million pain-and-suffering award. *See Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 156 (D.D.C. 2011) (awarding $2 million to a victim who suffered both psychological damage and lacerations to the thigh and rib cage).

Finally, the Special Master found that Rabbi Goldstein suffered serious injuries that fell within the $5-million-baseline category but warranted an upward variance to $6 million. As the Special Master's report describes in more detail, *see* Goldstein R. & R. at 4–5, Rabbi Goldstein

was attacked with a meat cleaver. His skull was broken, one ear was left "hanging by a thread," and his back was cut so deep that organs "were coming out," requiring a doctor to "manually hold them in place." Saul Goldstein Decl. ¶¶ 14, 19–20. Rabbi Goldstein underwent eleven hours of surgery, still requires psychological and neurological treatment, and still suffers some physical and cognitive impairments. *See id.* ¶¶ 21, 25. Fortunately, he has made a partial recovery, and still studies and teaches the Torah for a few hours each day. *Id.* ¶ 29. Accordingly, the Special Master correctly determined that his injuries are serious enough to warrant an upward adjustment from the $5 million baseline but not so severe as to qualify him for the $7 million baseline—a category typically reserved for those who sustained severe and permanent disfigurements or injuries of a similarly grave nature. *See* Goldstein R. & R. at 27–28.

2. Deceased Victims

The law is different for victims who die during or shortly after a terrorist attack. Where "death was instantaneous there can be no recovery" for pain and suffering. *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 112 (D.D.C. 2000). If a victim survives for a short time but succumbs to her injuries within "a period of several hours or less," "courts have rather uniformly awarded the [victim's] estate $1 million" for the mental anguish and physical pain the victim experienced in the final moments of her life. *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 81 (D.D.C. 2011) (cleaned up); *see also Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 83 (D.D.C. 2017) ("For periods of pain and suffering of a less than a minute to a few hours after an attack but prior to death, courts have awarded damages of $1,000,000."). If a victim survived for a longer period, such as 15 hours, courts tend to award more. *See Baker*, 775 F. Supp. 2d at 81. Here, the Special Master correctly recommended that the estates of Rabbi Aryeh Kupinsky and Rabbi Mosheh Twersky receive $1 million in damages for pain and suffering.

*See* Kupinsky R. & R. at 25, ECF No. 46-1; Twersky R. & R. at 21, ECF No. 46-1. There was evidence that both men suffered anguish in the final moments of their lives knowing that death was imminent. But neither man survived for long enough to warrant larger pain-and-suffering awards.

### 3. Relatives of Victims

Six relatives of victims—relatives who were not themselves present at the synagogue when it was attacked—seek damages for pain and suffering based on their alleged physical proximity to the attack. Five are relatives of Rabbi Kupinsky, who claim that during the attack they were in their family apartment "almost across the street from" the synagogue, though they refused to tell the Special Master precisely where the apartment was located. Yupinsky R. & R. at 25–26, ECF No. 46-1. To be sure, in certain circumstances, those not immediately present but nevertheless near a terrorist attack may be eligible for damages for the suffering they endured because of that close proximity. *See, e.g.*, *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 51 (D.D.C. 2016) (mother of a deceased victim who was outside the ballroom when an attack occurred and saw her "daughter carried out of the ballroom into an ambulance"). But here, the Special Master correctly determined that Rabbi Kupinsky's relatives were "safely ensconced" in their apartment. Yupinsky R. & R. at 27. And given "their inexplicable refusal to divulge the exact location of their apartment," the Kupinsky relatives failed to establish their entitlement to pain-and-suffering damages due to proximity to the attack. *Id.*

The sixth relative who seeks pain-and-suffering damages is Eliyahu Salis, the son of surviving victim David Salis. He claims that he witnessed emergency vehicles and other events related to the attack from a balcony near the synagogue. Salis R. & R. at 16. The Special Master correctly discredited that claim, however, because of Eliyahu's shifting narratives and his later

admission that he was "some distance away" from the attack. *Id.* The court therefore agrees with the Special Master that neither Eliyahu nor the Kupinsky relatives are entitled to pain-and-suffering damages based on physical proximity to the attack. These relatives are, however, entitled to solatium damages for their emotional proximity to victims of the attack, as explained below.

### B. Solatium Damages

Solatium damages seek to compensate the relatives of a victim for the "mental anguish, bereavement, and grief" that the relatives suffered because of their loved one's death or injuries. *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 356–57 (D.C. Cir. 2018) (cleaned up). "Only immediate family members—parents, siblings, spouses, and children—are entitled to solatium awards." *Opati v. Republic of Sudan*, 60 F. Supp. 3d 68, 79 (D.D.C. 2014). Courts generally presume that a spouse, parent, or child of a victim suffers "compensable mental anguish," but often require "testimony proving a close emotional relationship . . . to sustain an award of solatium damages" for a sibling. *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 403 (D.D.C. 2015).

In *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007), Judge Lamberth articulated one "commonly accepted framework" for calculating solatium awards. *Opati*, 60 F. Supp. 3d at 79. Under that framework, $8 million in solatium damages is generally appropriate for the spouse of a deceased victim, $5 million for the parent or child of a deceased victim, and $2.5 million for the sibling of a deceased victim. *Peterson*, 515 F. Supp. 2d at 51. The relative of a victim who was injured but survived is generally entitled to half of those amounts. *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 n.10 (D.D.C. 2011). For the reasons articulated by the Special Master, the court agrees that this framework should govern here.

That said, the framework is "not set in stone." *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010). "Courts should deviate" from it "depending on the circumstances."

*Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 59–60 (D.D.C. 2018).  For example, an upward deviation may be appropriate if the relative of a victim suffers unusually severe mental anguish leading to "suicidal thoughts and attempts."  *Cabrera v. Islamic Republic of Iran*, No. 18-cv-2065, 2022 WL 2817730, at *50 (D.D.C. July 19, 2022).  A downward variation "may be appropriate where the evidence suggests that the relationship between the victim and his family members is attenuated."  *DiBenedetto v. Islamic Republic of Iran*, No. 16-cv-2429, 2020 WL 820877, at *3 (D.D.C. Feb. 19, 2020).  But given the importance of consistency across cases, deviations are generally not warranted absent evidence of "unusual" circumstances.  *Roth*, 78 F. Supp. 3d at 405.

1. <u>Relatives of Deceased Victims</u>

The Special Master correctly determined that the Plaintiffs who are relatives of Rabbis Kupinsky, Levine, and Twersky should each receive the standard amounts in solatium damages.  Kupinsky R. & R. at 30–42; Levine R. & R. at 36–48; Twersky R. & R. at 24–31.  Although these Plaintiffs undoubtedly suffered anguish because of their loved one's death, none of them adequately demonstrated the sort of "unusual degree of mental anguish" that would warrant an upward deviation.  *Roth*, 78 F. Supp. 3d at 405.  To support their claims for enhanced damages, the Kupinsky relatives and the Levine relatives both submitted evaluations by Dr. Rael Strous, a psychiatrist.  *See* Kupinsky R. & R. at 37–38; Levine R. & R. at 41–45, ECF No.46-1.  But the Special Master correctly concluded that those evaluations were not reliable because Dr. Strous failed to adequately explain his methodology.  For example, Dr. Strous said that he conducted a "clinical interview" with each Plaintiff, but he did not disclose the length of the interviews.  Dr. Strous also said that he reviewed "relevant materials," but he did not specify which materials.

Accordingly, plaintiffs failed to establish the sort of unusually severe anguish that would warrant a deviation.

Nor did any of these Plaintiffs prove the sort of "*especially* close relationship" that would justify an upward departure. *Kinyua v. Republic of Sudan*, 466 F. Supp. 3d 1, 11 (D.D.C. 2020) (emphasis added). To be sure, the court does not doubt that Rabbis Kupinsky, Levine, and Twersky were devoted family men. But Plaintiffs have not offered sufficient evidence of unusually close bonds that would warrant treating Plaintiffs' grief as greater than that of other victims who have lost cherished family members to terrorism. Finally, the November 18 attack did not involve the sort of "aggravating circumstances," such as "torture or kidnapping," which might "appreciably worsen" a relative's anguish. *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006). The court therefore agrees with the Special Master's recommendations that the relatives of deceased victims receive the standard solatium amounts.

2. Relatives of Surviving Victims

As discussed above, when a "victim survive[s] a terrorist attack," solatium "awards are [usually] valued at half" of what "family members of the deceased" would receive. *Oveissi*, 768 F. Supp. 2d at 26 n.10. Thus, spouses of surviving victims are generally entitled to $4 million, parents and children to $2.5 million, and siblings to $1.25 million. *Id.* However, it is usually "inappropriate for the solatium awards of family members to exceed the pain and suffering awards of the surviving" victims. *Estate of Brown v. Islamic Republic of Iran*, 872 F. Supp. 2d 37, 42 (D.D.C. 2012); *see also Bland*, 831 F. Supp. 2d at 158 ("[T]he Court does not think it appropriate for the children and spouse to recover more than the victim."). If, for example, a victim suffered purely emotional injuries and received a $1.5 million pain-and-suffering award, it would be inappropriate for her spouse to receive $4 million in solatium damages. Consequently, courts

generally reduce family members' solatium awards so that they are proportional to the surviving victim's pain-and-suffering award. *See Goldstein v. Islamic Republic of Iran*, 383 F. Supp. 3d 15, 22 (D.D.C. 2019).

Starting with Eliyahu Salis, the court agrees with the Special Master's recommendation that he receive $750,000 in solatium damages. *See* Salis R. & R. at 17–20. Although, as the child of a surviving victim, Eliyahu is theoretically entitled to a $2.5 million solatium award, that sum would significantly exceed his father's $1.5 million award for pain and suffering. *See supra* section III.A.1. The Special Master's proposed $750,000 award for Eliyahu is more proportional to his father's $1.5 million award. *See, e.g.*, *Bland*, 831 F. Supp. 2d at 157–58 (reducing the solatium award for the children of a victim to $750,000 each where the victim received a $1.5 million pain-and-suffering award). The court further agrees with the Special Master that Eliyahu failed to show any circumstances warranting an enhanced award.

Next, the court considers the awards to Rabbi Goldstein and his son Mordechai, who were present at the November 18 attack. Rabbi Goldstein suffered serious physical injuries that warrant a $6 million pain-and-suffering award, and Mordechai suffered purely emotional harms that entitle him to a $1.5 million award. *See supra* Section III.A.1. In addition to their own awards for pain and suffering, Rabbi Goldstein and Mordechai are also entitled to solatium awards due to their relationships with each other. The court agrees with the Special Master that Mordechai should receive the default $2.5 million under the framework because that solatium award would not exceed his father's $6 million pain-and-suffering award. But Rabbi Goldstein should not receive the default $2.5 million for a parent because that sum would exceed his son's $1.5 million pain-and-suffering award. Instead, Rabbi Goldstein is entitled to a more proportionate solatium award of $750,000. *See, e.g.*, *Bland*, 831 F. Supp. 2d at 157–58.

Turning to the Goldstein relatives who were not present at the attack, solatium awards may also become excessive when a plaintiff is related to multiple victims. Miriam Goldstein is theoretically entitled to $4 million in solatium damages as Rabbi Goldstein's wife and $2.5 million as Mordechai's mother for a total of $6.5 million. The eight remaining Goldstein children are each theoretically entitled to $2.5 million as Rabbi Goldstein's children and $1.25 million as Mordechai's siblings for a total of $3.75 million. But if awarded these aggregate sums, the Goldstein relatives would receive significantly more in solatium damages "than most direct terrorist attack victims recover in pain and suffering damages" even though both of their family members survived. *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 40 (D.D.C. 2012). The court agrees with the Special Master that this would be excessive.

To resolve this issue, the Special Master recommended following the approach set out in *Wultz v. Islamic Republic of Iran*. The court agrees. Under the *Wultz* approach, the court establishes each relative's baseline solatium award at the higher of the two sums, and then evaluates whether an upward variance is warranted from there. Goldstein R. & R. at 34–35 (citing *Wultz*, 864 F. Supp. 2d at 40); s*ee also Barry v. Islamic Republic of Iran*, 437 F. Supp. 3d 15, 56 (D.D.C. 2020) (describing the *Wultz* approach as "compelling"). Miriam Goldstein's baseline is therefore $4 million, and each of the remaining Goldstein children's baseline is $2.5 million. The court further agrees with the Special Master that each Goldstein relative should receive a 10% upward adjustment to their baseline sums to account for the fact that they had not one, but two relatives injured. *See* Goldstein R. & R. 35. There is, however, no unusual circumstance that would warrant giving any Goldstein plaintiff any other upward variance. *See id.* at 36–38.

C.  **Economic Damages**

Four Plaintiffs seek economic damages from lost earnings. That includes the estates of the three deceased victims—Rabbis Kupinsky, Levine, and Twersky. It also includes Rabbi Kupinsky's widow, Yakova Kupinsky, who, following her husband's death, took significant time off work and then left the workforce to care for their children. *See* Report of Michael Soudry re: Kupinsky Family Economic Loss ("Soudry-Kupinsky Report") at 7, ECF No. 47-1.

To recover expected future damages, a plaintiff must (1) prove that those damages "are reasonably certain . . . to occur," and (2) establish "the amount of damages by a reasonable estimate." *Hill*, 328 F.3d at 684 (cleaned up). A reasonable estimate "may be proven by the submission of a forensic economist's expert report," provided the expert relied on reasonable and well-founded assumptions regarding, for example, the person's "likely earnings if she had survived." *Roth*, 78 F. Supp. 3d at 402.

Here, all four Plaintiffs submitted reports from Michael Soudry, who is qualified as an expert in forensic accounting. *See* Curriculum Vitale of Michael Soudry, ECF No. 47-1 (detailing Soudry's extensive work as a forensic economist); *see also Ben-Yishai v. Syrian Arab Republic*, 642 F. Supp. 3d 110, 120 (D.D.C. 2022) (qualifying Soudry as an expert in forensic accounting). Soudry projected the lost future earnings of each Plaintiff by taking their past recent earnings, adjusting for several variables including wage growth and taxes, and discounting to present value using the yield rate of Israel's Long-term Government Bond. *See, e.g.*, Soudry-Kupinsky Report at 4–8.

The court agrees with the Special Master that given Soudry's thorough analysis and reliance on "generally accepted statistical data," his estimates are reasonable and well-founded. *See, e.g.*, Levine R. & R. at 35. The court will therefore accept the Special Master's

recommendations—based on Soudry's estimates—regarding economic damages. *See Kupinsky R. & R.* at 30; *Levine R. & R.* at 36; *Twersky R. & R.* at 36.

### IV.  PUNITIVE DAMAGES

Finally, the court will address Plaintiffs' claim for punitive damages. Punitive damages are available under the FSIA not to "compensate the victim," but "to punish and deter" state-sponsored terrorism. *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 80 (D.D.C. 2010). Thus, courts should fashion punitive damages sufficient to stop "defendants [from] planning, supporting and aiding the execution of [terrorist] attack[s]." *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 184 (D.D.C. 2010). Still, courts must be mindful that huge awards bearing no proportionality to the injuries suffered can "over-punish[]" defendants "with little [marginal] deterrent effect." *Murphy*, 740 F. Supp. 2d at 81. Thus, although punitive damages are not meant to compensate victims, it nevertheless makes sense to tie "the amount of punitive damages awarded" to "the amount of compensatory damages" suffered using a multiplier. *Id.* at 82.

Plaintiffs request a multiplier of 3.44. *See* Emergency Mot. at 6.[2] They point to this court's decision in *DiBenedetto v. Islamic Republic of Iran*, which calculated punitive damages by multiplying each plaintiff's compensatory damages by 3.44. 2020 WL 820877, at *3. Given the importance of maintaining consistency across decisions, the court will adopt that multiplier here. Like the November 18 attack at issue in this case, *DiBenedetto* involved a deadly terrorist attack. And like the attack in *DiBenedetto*, the attack here did not involve aggravating circumstances like torture or kidnapping that might warrant a higher multiplier. Accordingly, the court will GRANT

---

[2] Plaintiffs request the multiplier used by this court in *DiBenedetto v. Islamic Republic of Iran*, which was 3.44. Plaintiffs incorrectly state that *DiBenedetto* used a multiplier of 3.4. The court construes this mistake as a typographical error and understands the Plaintiffs to be requesting the same multiplier as used in *DiBenedetto*.

the remainder of Plaintiffs' Emergency Motions, award punitive damages using a multiplier of 3.44, and enter final judgment as to punitive damages in an order to follow.

V.   CONCLUSION

Syria and Iran sponsored the terrorists who inflicted great horrors on Plaintiffs. Special Master Balaran carefully examined Plaintiffs' claims for compensatory damages, and the court agrees with his analysis. The court will also GRANT Plaintiffs' reasonable request for punitive damages.

Date: October 20, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge